**Edgar F. KAISER, Jr., Plaintiff,**

v.

**Patrick D. BOWLEN, PDB Sports, Ltd., a Colorado limited partnership, Bowlen Sports, Inc., an Arizona corporation, doing business in Colorado, and PDB Enterprises, Inc., a Colorado corporation, Defendants.**

No. CIV.A. 99–M–2458.

United States District Court, D. Colorado.

Jan. 9, 2002.

George Stephen Long, John D. Phillips, Jr., Cynthia Treadwell-Miller, Shugart, Thomson & Kilroy, P.C., Denver, CO, for plaintiff.

Margaret M. McClellan, Robinson, Waters & O'Dorisio, P.C., Denver, CO, Richard Paul Slivka, Denver Broncos Football Club, General Counsel, Englewood, CO, Daniel M. Reilly, Wendy Britt Fisher, Hoffman, Reilly, Pozner & Williamson, L.L.P., Denver, CO, for defendants.

### MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

The plaintiff, Edgar F. Kaiser, Jr. ("Kaiser") alleged in his first amended complaint, filed January 19, 2001, that in 1984, EFK Sports, Ltd., a Colorado limited partnership, owned and operated the Denver Broncos Football Club ("Broncos"), a franchise of the National Football League. As a general partner, Kaiser owned 60.55% in EFK Sports, Ltd. JRA Sports, Ltd. ("JRA") owned 39.2% as a limited partner. John Adams owned JRA. On March 16, 1984, Kaiser and Patrick D. Bowlen ("Bowlen") entered into an Agreement of Sale ("Sale Agreement") for the sale of the 60.55% general partnership interest in EFK Sports, Ltd. to Bowlen. The Sales Agreement was amended on June 1, 1984, to add the sale of the remaining 0.25% general partner interest owned by EFK Sports Holdings, Ltd., an entity owned by Kaiser. As amended, the Sales Agreement provided for Bowlen's purchase of the entire general partnership interest for $26 million.

Under Section 6.17 of the Sale Agreement, Kaiser had a right of first refusal if Bowlen intended "to sell or transfer all or any interest in the Partnership Interest thus acquired, or all or any portion of the

Broncos franchise ..." Section 5 of the amendment contained a similar provision. The sale to Bowlen closed on June 1, 1984. The transaction was structured as a private offering exempt from federal or state securities registration requirements. The Sale Agreement contained representations by Bowlen that he was purchasing the partnership interest for his own account and had no agreement or intention to transfer all or any part of his partnership interest to any third person. *See* Sale Agreement, Section 4.08(b) and (c). After Bowlen acquired the general partnership interest, EFK Sports, Ltd. changed its name to PDB Sports, Ltd.

Kaiser further alleged that Bowlen bought the 39.2% limited partnership interest in EFK Sports, Ltd. from JRA. Apparently that purchase was made pursuant to a buy-sell option between the general and limited partners referred to in Section 4.13 of the Sale Agreement.

The amended complaint contains allegations that the Broncos franchise is now owned by PDB Sports, Ltd., a Colorado limited partnership in which the 60.8% general partnership interest is owned by Bowlen Sports, Inc. ("BSI"), an Arizona corporation, and the 39.2% limited partnership interest is owned by PDB Enterprises ("Enterprises"), which is owned by BSI. BSI is said to be owned by Hambledon Sports, Inc. ("HSI"). The plaintiff alleges that HSI is owned or controlled by Bowlen, his sister Mary Beth Jagger, his brothers Bill and John (or the John Bowlen Trust) and the Arvella Regis Bowlen Trusts Nos. 1 and 2. Arvella Regis Bowlen is Bowlen's mother.

Kaiser contends that the transfers leading to the present ownership were made in violation of his contractual right of first refusal, and he asserts six claims for relief under the diversity jurisdiction granted to this court by 28 U.S.C. § 1332. The claims are (1) specific performance; (2) damages for breach of contract from Bowlen; (3) damages against transferees PDB, BSI and Enterprises; (4) damages for fraud and misrepresentation against Bowlen; (5) fraudulent concealment against Bowlen and (6) imposition of a constructive trust on the interests owned by PDB, BSI and Enterprises. The defendants moved for dismissal of the first through fifth claims for relief.

The defendants argue that the remedy of specific performance is unavailable because any transfer of ownership in the Broncos, requires the approval of not less than three-fourths or 20, whichever is greater, of the members of the NFL.

■ Kaiser admits this provision in the NFL Constitution and by-laws but denies that it bars specific performance, contending that the court could order specific performance but retain jurisdiction to award damages in the event that the NFL did not approve the transaction.

■ Section 6.12 of the Sale Agreement provides that Colorado law applies. In Colorado, "it is well settled that a contract which depends for its performance on the act or assent of a person not a party to the agreement will not be specifically enforced." *Himes v. Stitt,* 36 Colo.App. 249, 540 P.2d 1104 (1975). A limited exception to that rule was recognized in *Chandler Trailer Convoy, Inc. v. Rocky Mountain Mobile Home Towing Services, Inc.,* 37 Colo.App. 520, 552 P.2d 522, 523 (1976), in which the court stated, "the mere fact that a contract or transfer is subject to the approval of a public agency is not a bar to a decree compelling a party to execute the documents necessary for the consummation of the contract or transfer." This case is one which falls within the general rule and not the exception because the discretion exercised by private parties in

their own self interest is different from that of a governmental agency in the public interest. Specific performance is not available under these circumstances. *Himes,* 540 P.2d at 1106. The first claim for relief is dismissed.

■ The defendants seek dismissal of the second and third claims, arguing the claims are based on factually inconsistent allegations. In paragraphs 51, 52, 58, and 62 of the first amended complaint, Kaiser alleges that when Bowlen entered into the Sale Agreement and purchased the partnership interest from Kaiser, he secretly acted as an agent for undisclosed principals. In paragraphs 24, 47, and 63, Kaiser claims that Bowlen transferred partnership interests to members of the Bowlen family group in violation of Kaiser's right of first refusal. These allegations are not necessarily inconsistent. The alleged "undisclosed principals" are not identified in the first amended complaint, and may not be the same individuals or entities as those who are alleged to be the transferees. Alternative theories of relief are permitted at the pleading stage of litigation. The plaintiff may be required to elect between these claims before trial.

■ The defendants seek dismissal of the fourth and fifth claims for relief on the ground that the plaintiff has failed to plead fraud with particularity as required by Fed.R.Civ.P. 9(b). The complaint must contain allegations of the specific representations alleged to be fraudulent, where and when the statements were made, the particular defendant making the misrepresentations, and what was false about them. *Armani v. Maxim Healthcare Servs., Inc.,* 53 F.Supp.2d 1120 (D.Colo.1999).

■ Kaiser alleged that Bowlen falsely represented in the Sale Agreement that he was acting on his own behalf, and falsely represented that he did not intend to transfer the partnership interest. These allegations are sufficient to meet the pleading requirements of Rule 9(b). The plaintiff has identified the specific representations alleged to be false, when the statements were made, and who made them. He has also alleged that Bowlen's representations were material to the terms of the sale transaction, that he relied upon them, and suffered damages as a result. The defendant's motion to dismiss the fourth and fifth claims is denied.

The defendants request a ruling that Kaiser's right of first refusal does not apply to (1) transfers that were not an arms-length sale to a third party; and (2) transfers of the 39.2% limited partnership interest.

### (1) Transfers which were not arms-length transactions

Kaiser's right of first refusal is set forth in two documents, the Sale Agreement and the Amendment. Section 6.17 of Sale Agreement states:

> SECTION 6.17. *Right of First Refusal.* In the event that, after transfer to Purchaser of the Partnership Interest in the manner contemplated by this Agreement, Purchaser shall elect or intend to sell or transfer all or any portion of the Partnership Interest thus acquired by Purchaser, or all or any portion of the Broncos franchise, then Purchaser shall promptly notify Seller of such election or intention, whereupon Seller shall have 14 days after the effective date of such notice to notify Purchaser of its election to make such purchase, or to have such transfer made to Seller, on substantially the same terms and conditions as shall have been offered to Purchaser; *provided* that Seller shall have no right of first refusal as a result of a sale or transfer to be made as a result of the exercise of

the "buy-sell" option described in Section 4.13.

Section 5 of the Amendment states:

Section 5 *Right of First Refusal*

■ The rights of Kaiser pursuant to Section 6.17 of the Sale Agreement shall apply mutatis mutandis to the 0.25% Partnership Interest to be conveyed by Holdings to Bowlen as herein contemplated. The parties expressly agree that the rights of Kaiser under this Section 5 and under Section 6.17 of the Sale Agreement in respect of the right of first refusal to acquire any Partnership Interest of Bowlen, upon the contemplated sale thereof by Bowlen, at the price and on the terms available to Bowlen from a third party, shall not be assignable or transferable by Kaiser *provided* that Kaiser shall be entitled to transfer such right of first refusal to a Subsidiary of Kaiser but such right shall terminate upon the transfer thereof by such Subsidiary or upon such Subsidiary ceasing to be a Subsidiary.

The defendants argue that the language in the second sentence of Section 5 of the amendment *"upon the contemplated sale thereof by Bowlen, at the price and on the terms available to Bowlen from a third party "* limits Kaiser's right to a transaction constituting a contemplated sale to an arms-length buyer. The defendants' proposed interpretation would exclude transfers at less than fair market value which were made for business or tax motivated reasons.

The defendants also cite Section 6.06 of the Sale Agreement in support of their contention that the right of first refusal does not apply to transfers to a subsidiary or subsidiaries. Section 6.06 of the Sale Agreement states:

SECTION 6.06. *Successors and Assigns.* The provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns; *provided* that Purchaser may not assign or otherwise transfer any of its rights or obligations under this Agreement, *except that Purchaser may assign or otherwise transfer all or any portion of the provisions of this Agreement to a Subsidiary of Purchaser, provided* that (i) Purchaser continues to remain liable for all obligations hereunder to the full extent herein provided; and (ii) such Subsidiary remains a "Subsidiary" (as defined in Section 1.01 of this Agreement) until all amounts payable under this Agreement and the Note shall be paid in full. (Emphasis added). "Subsidiary" is defined as a corporation or other entity for which one's ownership interest would permit that person to elect a majority of the board of directors. *See* Section 1.01 of Sale Agreement, p. 5. According to the defendants, Section 6.06 demonstrates the parties contemplated Bowlen might transfer his partnership interest to a subsidiary, and they did not intend the right of first refusal to apply to such a transfer.

The language of the Sale Agreement as amended, is ambiguous. Although Section 5 of the Amendment refers to a contemplated *sale* by Bowlen, Section 6.17 of the Sale Agreement makes the right of first refusal applicable to an intended sale or *transfer.* Transfer has a broader meaning than sale. The second sentence of Section 5 may be read to merely limit Kaiser's ability to transfer his first refusal rights. That sentence does not redefine the right of first refusal set forth in Section 6.17 of the Sale Agreement.

The subsidiary-transfer language of Section 6.06 gives some support to the defendants' argument, but it is not conclusive. The plaintiff contends that Section 6.06 merely permitted Bowlen to transfer his

purchaser rights to a subsidiary prior to closing and has no application to transfers to subsidiaries after the closing. Additionally, the plaintiff argues that even if subsidiary transfers are excluded, some of the transfers by Bowlen may have been to entities which did not meet the contractual definition of "subsidiary." Because these provisions are ambiguous, the dispute cannot be resolved on a motion to dismiss.

The defendants also request the court to rule as a matter of law that the plaintiff's interpretation of the agreement would be unenforceable as an unreasonable restraint on alienation, citing *Kroehnke v. Zimmerman,* 171 Colo. 365, 467 P.2d 265 (1970). The issue presented in *Kroehnke* was whether a transfer of title by property owners to a corporation controlled by them constituted a sale subject to the plaintiff's right of first refusal. In concluding that the challenged transaction was not a sale within the meaning of the contract, the court stated, "there is nothing in the record to suggest arms' length dealing between an owner willing (but not forced) to sell, and a buyer willing (but not forced) to buy, which customarily characterizes a sale in the open market." *Id.* at 267. The defendants interpret *Kroehnke* as meaning that only transactions the equivalent of an arm's length sale will trigger a contractual right of first refusal.

The defendants read *Kroehnke* too broadly. In reaching its conclusion, the court examined both the contract language and the nature of the transaction at issue. The starting point for the court's analysis was the intention of the parties as expressed in the contract. "To resolve the issue the terms of the agreement must be construed to determine the intention of the parties." *Kroehnke,* 467 P.2d at 267. In this case, it is not clear from express language of the contract that the parties intended the right of first refusal to apply only to transactions equivalent to arms-length sales. Moreover, the details of the transactions alleged to give rise to Kaiser's right to exercise the right of first refusal are not fully before the court at this time. The defendant's request for a ruling limiting the applicability of the right of first refusal is premature.

**(2) Exclusion of the 39.2% limited partnership interest**

■ The defendants argue that Kaiser's right of first refusal does not apply to the 39.2% limited partnership interest which Bowlen purchased from JRA in September 1985. Section 6.17 defines Kaiser's right of first refusal as arising in the event that Bowlen "shall elect or intend to sell or transfer all or any portion of the *Partnership Interest thus acquired by Purchaser,* or all or any interest in the Broncos franchise ....*" The defendants emphasize the partnership interest "thus acquired" was the 60.8% general partnership interest, not the limited partnership interest. The defendants also rely upon the last sentence of Section 6.17 which states, "Seller shall have no right of first refusal as a result of a sale or transfer to be made as a result of the exercise of the 'buy-sell' option described in Section 4.13." Bowlen and his family obtained the 39.2% limited partnership interest as a result of Bowlen's exercise of the buy-sell option referenced in Section 4.13. According to the defendants, Section 6.17 explicitly limits Kaiser's first refusal rights and exempts its application from transfers of the limited partnership interest.

In response, Kaiser points to the language in Section 6.17 stating his first refusal rights arise not only in the event that Bowlen intends to sell or transfer his partnership interest, but also if Bowlen intends to sell or transfer *"all or any interest in the Broncos franchise"*. According to

Kaiser, the exclusionary language in the last sentence of Section 6.17 means that the right of first refusal did not apply to the transfer which effected Bowlen's *acquisition* of the 39.2% limited partnership interest from JRA, but once Bowlen exercised the option, Kaiser's first refusal rights applied to any transfer by Bowlen of his partnership interest or all or any interest in the Broncos franchise. Kaiser contends that Section 4.13 of the Sale Agreement shows the buy-sell option was an interest appurtenant to the general partnership interest acquired by Bowlen from Kaiser. Therefore, it was within the contemplation of the parties that Bowlen might exercise the buy-sell option, and the wording of Section 6.17 included "all or any interest in the Broncos franchise" to evidence the broad application of Kaiser's first refusal rights. The defendants dismiss the "all or any interest in the franchise" language by arguing the franchise is and was an asset of the partnership and has never been transferred.

Kaiser's interpretation of Section 6.17 is not implausible. The last sentence of Section 6.17 is poorly drafted, and its meaning is not clear. This question cannot be resolved on the present pleadings.

Upon the foregoing, it is

ORDERED that the first claim for relief is dismissed and the defendants' motion to dismiss the second, third, fourth and fifth claims for relief is denied.